The Denver & Rio Grande Railway Company, Plaintiff in Error, v. Outcalt, Defendant in Error.

1. Constitutional Law.

Section 3712, Mills' An. Stats., fixing upon railroad companies an absolute liability for damages for all stock injured or killed, and sec. 3713, which provides for a recovery of double the appraised

value of the animals injured or killed, with a reasonable attorney's fee in case of failure to pay the appraised value within the time prescribed, are unconstitutional and void.

2. CONSTRUCTION.

A statute may be declared unconstitutional in part and valid in part, but this can occur only when its provisions can be separated and made independent. When its provisions are interdependent, the entire statute must stand or fall.

*Error to the County Court of Gunnison County.*

THIS was a statutory action brought against the railway company to recover the price or value of a mare killed by an engine. There is no serious conflict of testimony. The facts as established are, that plaintiff below (defendant in error) had several horses running in a pasture on his farm,—the railway of plaintiff passed through the pasture; that defendant, for his own convenience in catching or handling the horses, turned four or more out with ropes or lariats on, twenty or twenty-five feet long, one end being around the neck of the animal, balance loose and dragging; the mare killed was one of those encumbered with a rope. The horses on the approach of the engine were in the immediate vicinity of the track; the train was "slowed up" and whistle blown; the horses crossed the track and were supposed to be entirely out of danger, but immediately after it was seen by the engineer and fireman that the mare in question was fastened to the track by the rope being caught in the track, the end caught or fastened being on the opposite side from the mare, the rope consequently passing across the track was caught by the engine; the air brakes were at once applied but it was impossible to stop in time; the mare was pulled upon the track by the rope, struck by the engine and killed, or injured so as to make killing necessary. An appraisement was had and the mare valued at $200. The company failed to pay within thirty days; suit was subsequently brought, a trial had, resulting in a judgment for the plaintiff for $400, double the appraised value, also for $50 attorney's fee, making the amount $450 and costs.

Messrs. WOLCOTT & VAILE, for plaintiff in error.

Messrs. GULLETT & CRUMP, for defendant in error.

REED, J., after stating the facts, delivered the opinion of the court.

The provisions of the statute under which the action was brought, and which are necessary to be considered in determining the case, are the following :—

2 Mills' Stat., p. 1979, § 3712.—" That every railroad or railway corporation or company operating any line of railroad or railway or any branch thereof, within the limits of this state, which shall damage or kill any horse, mare, gelding, filly, jack, jenny or mule, or any cow, heifer, bull, ox, steer or calf, or any other domestic animal, by running any engine or engines, car or cars, over or against any such animal, shall be liable to the owner of such animal for the damages sustained by such owner by reason thereof."

And § 3713, p. 1980-81.—" And such railroad or corporation shall within thirty days after the receipt of such certificate, pay to the owner of the stock so killed or damaged, or to his or her authorized agent, the amount of such appraisement, together with all the costs, as aforesaid ; and in all cases where the value of such stock is established by this act, such company or corporation shall pay for such stock within thirty days after the delivery of the affidavit and certificate of ownership of brand, or affidavit of ownership of said stock, and if any such company shall so fail to pay for such stock within thirty days after the delivery of such affidavit and certificate, such company shall be liable for double the value the appraised or schedule value of any such animal or animals, together with reasonable attorney's fees, to be allowed by the court."

The only question presented and urged in argument is the supposed unconstitutionality of the statute in question. It is ably contended, first, that defendant is absolutely fore-

closed, precluded from all defense, having no day in court;
second, that the statute is penal in character, in doubling the
amount of appraised valuation and adding an attorney's fee
for a failure to pay within the thirty days limited and pre-
scribed. The questions presented are delicate and trouble-
some. Were the questions between individuals, the solution
would be far easier. Railroad corporations having no natu-
ral rights but their existence, and all rights being franchise
rights granted by the state, to what extent they can be sub-
jected to class legislation and taken out of the domain of
general laws and principles applicable to individuals is a se-
rious and intricate question. The granting by the state of a
franchise to operate a railroad, and its acceptance by the cor-
poration is regarded in the light of a contract, and where the
legislation preceded the act of incorporation, such laws are
supposed to be contemplated and accepted by the party ac-
cepting the charter and to form a part of the contract, but
when the restrictive and arbitrary legislation is subsequent
to the grant and acceptance, the question is, how far a cor-
poration can be subjected to class legislation, to law made
applicable only to it.

After careful and exhaustive examination of the authori-
ties I am reluctantly compelled to hold the statute in question,
as construed and administered in our courts, unconstitution-
al and void. I am the more reluctant, from the fact that
although its constitutionality has not been directly decided
by the supreme court, as far as I can ascertain, there are
cases that may be construed as sustaining the statute. In
*Denver & Rio Grande Railway Co. v. Henderson*, 10 Colo. 1,
it is said: "Upon a full and careful compliance by the owner
of the animal injured with the requirements of the act, he
would seem to be entitled thereunder to the compensation
fixed or proven as the case may be, regardless of the ques-
tion of negligence on the part of the defendant company.
Failing to comply with the statute, however, such owner
may still have his common law action."

It will readily be seen that the question of the validity

of the statute was neither raised nor determined.   The court held the statute not the exclusive remedy, but cumulative; that the party could make his election, and having made it in favor of the common law action, he was required to make proof of negligence.   In other words, that he could not recover without complying with the requirements of the common law, regardless of the statute.   In the paragraph cited the learned judge was very guarded in discussing the statute —says : " *He would seem to be entitled,*" etc.   It is only discussed in so far as was necessary to distinguish between the amount and character of proof required to make a case.

In *Union Pac. R. v. DeBusk,* 12 Colo., 294, in a very elaborate opinion, the statute making railroad corporations liable for damages caused by fire is declared constitutional, but the decision cannot in any way be construed to cover the statute in question.   There are in this important provisions, viz., in regard to double compensation and an attorney's fee not contained in that; again, science and practical experience may have clearly demonstrated that, with proper mechanical appliances and care, fire would not be communicated. If such is the fact the statute only requires such protection to the  property of others as public policy and common prudence would dictate; and the absolute liability for the actual damage may be regarded as a proper penalty for a failure, either to provide proper appliances, or exercise proper care. It is only upon this theory that the statute can be sustained.

Although the discussion in the opinion takes a wide range, the conclusion must be held applicable only to the statute involved in the case; it cannot be presumed that it was the intention of the court to anticipate and decide in advance questions that might arise in regard to another statute, on a subject hardly analogous, and containing other and different provisions.

One criticism upon the opinion may be allowed.   From the discussion and language used, it seems impossible to determine whether the statute in question in that case was regarded as absolute in character, fixing the liability for the

damage on proof that the fire was communicated by the engine, or whether that fact was to be regarded only as *prima facie* evidence of negligence that might be rebutted by evidence for the defense. In either statute, the validity greatly depends upon the construction of the statute and the solution of that question.

The statute under consideration in this case, as construed and applied, violates art. XIV (14th amendment of the constitution of the United States), which says: * * * " nor shall any state deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." It is also in violation of sec. 25, Bill of Rights of this state, which declares, " that no person shall be deprived of life, liberty or property without due process of law." Though differing slightly in wording, the same declaration or provision occurs in the constitutions of all the states, a principle asserted in *Magna Charta*, which was embodied in, and became a fundamental principle of the common law, asserting the inviolability of the equality of all persons before the law, and prohibiting class or discriminating legislation.

In England, the authority of parliament is subject to the limitation that no law shall be passed which is contrary to common right and natural justice. In the old case of Dr. Burham, 8 Coke, 1183, Lord Coke said : " It appears in our books that in many cases the common law will control acts of parliament and adjudge them to be utterly void; for, when an act of parliament is against common right and reason, or repugnant, or impossible to be performed, the common law will control it and adjudge such act to be void." And see *Day v. Savadge*, Hobart, 85.

" Due process of law " has been frequently and variously defined, the result reached in each instance being the same. The briefest and most comprehensive definition is that of Johnson, J., in *Bank of Columbia v. Okely*, 4 Wheat. 244: " They were intended to secure an individual from the arbitrary exercise of the powers of government, unrestrained by

the established principles of private rights and distributive justice." Judge Story (Story Const., § 1935) defines it as follows : " The right to be protected in life and liberty and in the acquisition of property *under equal and impartial laws which govern the whole community*. This puts the state upon its true foundation, a society for the establishment and administration of general justice, justice to all, equal and fixed, recognizing individual rights and not impairing them." In Cooley on Const. Limit. § 356, it is said : " Due process of law, in each particular case, means such an exertion of the government as the settled maxims of the law permit and sanction, and under such safeguards for the protection of individual rights as those maxims prescribed for the classes of cases to which the one in question belongs."

Mr. Webster, in *Dartmouth College v. Woodward*, 4 Wheat. 519, said : " By the law of the land is most clearly intended the general law ; a law which hears before it condemns, which proceeds upon inquiry, and renders judgment only after trial. The meaning is that every citizen shall hold his life, his liberties, his immunities under the general rules which govern society."

In *Hurtado v. California*, 110 U. S. 536, Mr. Justice Matthews said, while recognizing the inherent and reserved powers of the state to make their own laws and alter them at pleasure, " that these reserved powers must be exerted within the limits of the fundamental principles of liberty and justice, which lie at the base of all our civil and political institutions." The same principle is recognized and ably asserted by Beck, C. J., in *In re Lowrie*, 8 Colo. 499. " Properly construed these maxims interpose no barriers in the way of wholesome legislation of any kind, but they prevent special and class legislation, and all forms of legislation the effect of which is to extend privileges and securities to a portion of the community which are withheld from another portion, although relating to the same class of subjects. So far as the laws are conformable to the constitutional provision guaranteeing equal and impartial security and the protection of the

VOL. II—26

rights of the whole community, they become the law of the land, and the adjudication of individual rights thereunder is by due process of law. The same principles are applicable whether we refer to the enactment of laws by general assemblies or to their judicial interpretation. They must be so framed and so administered as to come within the constitutional landmarks, abridging the immunities and privileges of no person, but affording equal protection to all."

However it may be in England, it is clear that the constitutions of this and other states confer no power upon the legislature to enact laws in conflict with the principles of natural justice and equity of the common law, upon which those constitutions were founded, and which for centuries have been regarded as fundamental. The general grant of power to make " reasonable and wholesome laws " is limited; it confers no power to enact a law in violation of the fundamental principles of the common law as they existed at the time the constitutions were adopted.

In *East Kingston v. Towle*, 48 N. H. 61, it is said:— " Either way, whether these elementary principles of justice and equity are supposed to be embraced in the term of ' the law of the land,' or implied in the general nature of legislative authority, they equally limit the legislative power. It is a maxim of general jurisprudence, not confined to any code, but, so far as I am informed, recognized as fundamental in the law of every enlightened people, that no man's private rights shall be concluded by any judgment, decree or adjudication, to which he was not so far a party that he had opportunity to be heard and to adduce evidence on all points that affected his interests." See also Broom's Leg. Max. 735; 1 Greenlf. Ev. § 522; *Parsons v. Russell*, 11 Mich. 113; *Taylor v. Porter*, 4 Hill (N. Y.) 140; *Green v. Briggs*, 1 Curtis C. C. Rep. 311.

The business of operating railroads is legal and legitimate. The right is granted by the state and secured by charter. The public benefit of railroads is recognized; they are of inestimable value as agents in the settlement of the country,

the development of its resources and in its civilization, but they are agents of dangerous power. Their operation, under all circumstances, and handled with the greatest care, being dangerous to life and property, hence the necessity of precautionary measures and legislation requiring great care and the best mechanical appliances and skill. Such legislative and precautionary measures are the proper and the legitimate exercise of the police power of the state, but laws of that kind must define the duties and requirements, may require the fencing of roads, putting in cattle guards, prescribe a requisite amount of skill in operatives, and perfection in machinery and appliances, making such laws penal, and fixing a penalty for violation, but the statute under consideration is not of that character. It is the bald declaration "Thou shalt not kill," nor injure—declares that railroad corporations shall be liable for all damages to stock caused by their trains, without regard to the skill and care with which the train is operated, precluding all defense, even as in this case, of the gross negligence of the owner of the stock. The statute is absolute, conclusive of the liability upon proof of the injury and damage only.

There is no question of the power of the legislature to repeal laws of evidence, enact new and different laws, or to change or modify existing laws. It is regarded as valid and legitimate legislation within fixed limits. If the statute made the killing or injury of the stock *prima facie* evidence of mismanagement or neglect, and changed the common law burden of proof, and required the corporation to exonerate itself by competent evidence, the statute could stand, but precluding all defense and making the liability absolute, it clearly violates a fundamental principle of the constitution, and is repugnant to the principles and maxims of the common law upon which the constitution was based. It declares that the corporation shall be liable, and make payment, for damages inflicted by inevitable accident, which no care, skill, diligence or foresight could prevent, and precludes the corporation from exculpating itself or making any defense what-

ever. In this it is discriminating, special and void. Natural persons are allowed to defend and exonerate themselves, show that the misfortune was inevitable, and the accident and damage unavoidable. Any statute that forecloses a defendant and precludes all defense and denies the "day in court" is, and must be unconstitutional and void. Under the statute in question, as construed and applied in this case, the only participation in the proceedings allowed the defendant corporation is the right to participate in the appraisement of the value or damage.

Such is the absolute character of the statute and such its construction and application by the courts, that not only is the corporation prevented from showing its own care and diligence, and the unavoidable character of the accident, but it is also precluded from showing the contributory negligence, or even design, of a plaintiff in causing the injury. If the statute is to be regarded as so absolute and conclusive in character as to preclude all proof of negligence on the part of the plaintiff, it would also preclude proof of wanton and intentional acts in subjecting his animals to injury or destruction. Under the wording of the statute, making the liability absolute on proof only that the damage was done by the defendant, to allow proof of the negligence or willful acts of the defendant contributing to or causing it would be not an application of the statute, but a departure from it, there being no exceptions or provisions in it limiting its liability or exonerating it.

It is contended on the part of the defendant in error that similar statutes in several of the states have been held to be constitutional. I think this a mistake; in almost every instance, if not in all the cases, it will be found that the statute in question was the legitimate exercise by the legislature of the police power of the state, and that the liability was only made absolute as a penalty for a failure to comply with the requirements of the law, a failure to fence the road, to put in cattle guards, to blow whistles, ring the bell, reduce the speed to the required minimum, to employ competent

operatives or provide the best and most proper mechanical appliances.   Under such circumstances the law is penal in character, and the absolute liability, the penalty and the law can be sustained as a police regulation, but there is a marked distinction between a law of that character and the one under consideration.   Here there is no violation of a law, or· pretense of a failure to comply, by the corporation.   I think· that in almost every instance a statute making the liability absolute and not a penalty for a violation of law, has been held unconstitutional.

In addition to the authorities cited, see, *Zeigler v. Ala.· R. R. Co.*, 58 Ala. 594; *Stoudenmire v. Brown*, 48 Ala. 699; *Oliver v. Robinson*, 59 Ala. 46; *Kingston v. Towle*, 48 N. H. 57; *Piscataqua Bridge v. Portsmouth Bridge*, 7 N. H. 35; *Littleton v. Richardson*, 34 N. H. 179; *Opinions of Judges*, 41 N. H. 551; *Hurtardo v. California*, 110 U. S. 536; *Sullivan v. Oneida City*, 61 Ill. 242; *Millett v. People*, 117 Ill. 298; *Fetter v. Wilt*, 46 Pa. St. 460; *Board etc. v. Bakewell*, 122 Ill. 340; *Craig v. Kline*, 65 Pa. St. 413; *Cairo & Fulton R. R. v. Parks*, 32 Ark. 131; *Ohio & Miss. R. R. Co. v. Lackey*, 78 Ill. 55; *Jensen v. U. P. Railway*, 21 Pac. Rep. 994; *Billenburg v. Mont. N. R. Co.*, 8 Mont. 271.

The statute in question gives to the plaintiff double the appraised value of the animals killed or injured upon failure to pay within thirty days after appraisement.   The same can be said of this provision as of the former.   It can only be sustained as the penalty for the violation of an affirmative penal statute.   As such it could be sustained as punitive damage for the failure to comply with the statute, not otherwise. An attempt to enforce it in a case like the present, where it is not contended that there has been any violation of a statute, renders it unconstitutional and void.   When so applied it is repugnant to natural justice and equity, and opposed to the principles and maxims of the common law.   Conceding the corporation liable for the damages inflicted, regardless of the circumstances, what is the measure of damage?   According to the fundamental and long established principles

of equity and justice, the answer is obvious—adequate compensation for the injury received, the value of the animal as appraised, and if payment is refused or the money withheld for an unreasonable time, interest upon the amount. The unreasonable withholding of money is compensated in damages in the way of interest, generally fixed by statute; when that is not the case, the value of the use of the money for the time it is detained.

When double the amount of actual damage is arbitrarily given to the owner for thirty days detention, it can only be sustained, as before stated, as punitive damage; a penalty for the violation of a law presupposes criminal intention, or moral obliquity, a willful and malicious killing, wanton injury, and double value is awarded as punishment. When such facts are not established by evidence, or required to be, there can only be compensatory damage; anything further is repugnant to the constitution and the well-settled maxims of the common law, and, as in this case, allows the injured party twice the value of the property destroyed, not by any willful and malicious act, contravening a law, but by an inevitable accident, an injury, for which the plaintiff was responsible, or to which he contributed by culpable negligence.

It is further contended that the statute in question is unconstitutional in allowing the plaintiff in such actions an attorney's fee. In this case, in addition to the double appraised value, judgment was entered for an attorney's fee of $50.00.

It is true that a statute may be declared unconstitutional in part, and valid in part, but that can only occur when the provisions can be separated and made independent. In this statute it cannot be done; the provisions are so interdependent that the entire statute must stand or fall together. The same may be said of this provision that has been said of the former provisions, it can only be regarded as punitive damages, as a penalty for the violation of law, and cannot be sustained where no law has been violated. There are several respectable authorities sustaining a provision of that char-

acter, but in every instance there was a violation of a statute emanating in·the police power of the state, and where it was expressly made a penalty for such violation.   The same principles and reasoning applied to other parts of the statute are equally applicable to this.   See also *Calder v. Bull*, 3 Dall. 386.

In *Durkee v. Janesville*, 28 Wis. 464, it is said : " The genius, the nature, and the spirit of our state government amounts to a prohibition of such acts of legislation, and the general principles of law and reason forbid them."

In *Wilder v. Railway Co.*, 70 Mich. 382, the statute allowing an attorney's fee to be taxed as part of the costs was held unconstitutional, where it was made a part of the penalty for failure to fence the road as required by law.   The court said : " Calling it an ' attorney's fee ' does not change its real nature or. effect.   It is a punishment to the company, and a reward to the plaintiff, and an incentive to litigation on his part.   This inequality and injustice cannot be sustained upon any principle known to the law.   It is repugnant to our form of government, and out of harmony with the genius of our free institutions.   The legislature cannot give to one party in litigation such privileges as will arm him with special and 'important pecuniary advantages over his antagonist.   Here the legislature has granted special advantages to one class, at the expense and to the detriment of another, and has undertaken to make the courts themselves the active agents in this injustice, and to enforce them to impose penalties in the disguise of costs upon railroad companies for simply exercising, in certain cases, the common right of every person to make a defense in the courts when suits are brought against them.

" It was suggested by plaintiff s counsel, upon the argument, that the $25.00 was not imposed by the statute as a matter of distinction between the suitors, but as a punishment to the corporation for not obeying the law as to the fencing of its right of way, and that, if the railway company properly fenced its track, and complied with the law, it might then

stand equal in the courts with the plaintiff in actions of this kind. But penalties cannot be prescribed and enforced in this way, and, whatever may have been the object or intent of the legislature, the result of the statute is an injustice and an inequality as before shown, which the courts cannot tolerate, and must disregard in the administration of the laws."

This case has since been followed in that state. See *Schut v. Railway Co.,* 70 Mich. 433; *Rinear v. Railroad Co.,* 70 Mich. 623.

I am not prepared to go to the extreme length of the Michigan case and hold that an attorney fee could not legally be made a penalty for failure to comply with a law, but, as before stated, I am satisfied that the statute under consideration is clearly unconstitutional as it now stands.

The questions are of great importance; have been often presented, but not authoritatively met. In this case they could not be avoided.

This court not having final jurisdiction where constitutional questions are involved, we enter upon it with great reluctance. Whether our views are sustained or reversed, it may precipitate a final disposition of the questions presented.

The judgment is reversed and a new trial ordered according to the principles of the common law, disregarding the statute in question.

*Reversed.*