### BROOKS ET AL. V. PEOPLE.

1. CONSTITUTIONAL TEST WHETHER A CRIMINAL OFFENSE IS A FELONY OR A MISDEMEANOR.— Whether an offense not capital is to be deemed a felony or a misdemeanor is made to depend, under our constitution, on whether the same is punishable by imprisonment in the penitentiary or in the county jail.
2. WHERE THE STATUTE IS SILENT AS TO THE PLACE OF IMPRISONMENT, IT MUST BE IN COUNTY JAIL — SECTION 2594, GENERAL STATUTES, UNCONSTITUTIONAL.— A person convicted of conspiracy to defraud under General Statutes of 1883, section 811, which does not prescribe the place of imprisonment, was illegally sentenced to confinement in the penitentiary instead of the county jail, since, where criminal statutes admit of two constructions, that is to be preferred which is most favorable to defendant. The provision of General Statutes, section 2594, that where the term of imprisonment exceeds six months the prisoner shall be confined in the penitentiary, is unconstitutional and void, the subject of the act in which it occurs not being clearly expressed in the title thereof as required by article 5, section 21, of the constitution.

*Error to Criminal Court of Pueblo County.*

THE record in this case shows that the plaintiffs in error, B. Herbert Brooks and Sarah J. Brooks, were jointly indicted in the criminal court of Pueblo county for conspiracy to defraud the Washington Life Insurance Company, and that to such indictment they each entered a plea of guilty; that upon such plea the court sentenced the defendants to imprisonment in the state penitentiary for a term of two years each, which sentence they are now undergoing. The errors assigned all go to the jurisdiction of the court, upon such plea of guilty, to sentence to imprisonment in the penitentiary.

Messrs. CHARLES & SMITH, for plaintiffs in error.

MR. S. W. JONES, Attorney-General, and Mr. H. RID-DELL, for the people.

MR. JUSTICE HAYT delivered the opinion of the court.

The statute under which the indictment in this case is framed reads as follows: " If any two or more persons shall conspire or agree, falsely and maliciously, to charge or indict, or cause or procure to be charged or indicted, any person for any criminal offense, or shall agree, conspire or co-operate to do, or to aid in doing, any other unlawful act, each of the persons so offending shall on conviction be fined in any sum not exceeding $1,000, and imprisoned not less than three months nor exceeding two years." Sec. 811, Gen. St. 1883.

In this state two places are resorted to for the confinement of offenders against the state laws, to wit, the state penitentiary, and the county jail of the proper county. The penitentiary has long been recognized as the proper place for the incarceration of those convicted of the graver offenses only, while the county jails have been utilized for the confinement of those convicted of minor offenses, and confinement in the penitentiary has always been regarded as more severe than confinement in a county jail, on account of the disgrace and reproach attached to confinement in an institution thus set apart as a place for the incarceration of the more depraved and infamous classes of offenders; and under our constitution the test by which to determine whether an offense less than capital shall be deemed a felony or a misdemeanor is made to depend upon whether the same is punishable by imprisonment in the penitentiary or in the county jail. And by statute the consequences resulting from a conviction of a felony are made much more serious than those arising from a conviction of a misdemeanor. Art. 18, § 4, Const.; secs. 943, 944, Gen. St.

The number of peremptory challenges to which a defendant may be entitled in a given case is also made to depend upon whether the charge preferred against him amounts to a felony, or is a misdemeanor only. It will thus be seen that the distinction between the two grades of offenses is important, for many reasons. It will be noticed that the statute upon which this prosecution is based is silent in reference to the place of confinement; and, unless some other act can be found making the offense a felony, it is clear that a conviction will only authorize a confinement in that institution considered the less penal, to wit, the county jail. This is in accordance with a fundamental rule governing the construction of criminal statutes, which requires that, in case the statute admits equally of two constructions, that which is the more favorable to the defendant is to be preferred; and when the statute is silent as to the place of imprisonment, there being county jails for persons convicted of misdemeanors, and a penitentiary for those guilty of higher crimes, the former, rendering the punishment less severe, must be selected. *Horner v. State,* 1 Or. 269; *St. Louis v. Goebel,* 32 Mo. 295; End. Interp. St. 456.

In imposing the sentence in the case at bar, the criminal court, no doubt, had in mind the following provision, to be found in section 2594 of the General Statutes of this state: "All persons who shall hereafter be convicted of any crime under the laws of this state, or have been heretofore convicted under the laws of this state, or of the territory of Colorado, where the punishment is imprisonment for a period of time exceeding six months, shall be imprisoned in the penitentiary; and all courts in which such conviction shall be had shall give judgment accordingly."

An examination of our statutes will show that many offenses may fall within the terms of the above provision; for, while it is undoubtedly true that the place of confinement, whether in the penitentiary or the county

jail, is usually specified in our Criminal Code in connection with the offense, in some instances, where a term of imprisonment exceeding six months may be imposed for crime, the Criminal Code is silent in reference to the place of incarceration. Among other cases in which this silence is noticeable, the following may be mentioned: Section 799, fixing imprisonment for resisting an officer, in certain instances, for a term not exceeding one year; and the same section authorizes like imprisonment for any wanton beating of any person by an officer under color of such officer's commission. Section 854 authorizes a sentence of confinement, for a term not exceeding twelve months, in case of a conviction for procuring liquor for an habitual drunkard, knowing him to be such. Section 866 prohibits the emitting of any bill of credit, or any instrument of writing to be used as a general circulating medium in lieu of money, without a special leave from the legislative assembly, and fixes the punishment for the violation thereof by fine not exceeding $500, or imprisonment not exceeding one year. Section 898 makes it an offense punishable by a fine of not exceeding $1,000, or imprisonment not exceeding one year, or both, for any employee of a telegraph company, or any other person, to wilfully divulge the contents of any telegram. By section 910 a fine or imprisonment of not more than one year is provided for disturbing landmark or location stakes. And by section 917 it is provided that, if any person shall maliciously use the name of another, without his authority, in advertising any property or business upon any natural scenery, that he shall, on conviction, be punished by a fine, or imprisonment not to exceed *one year*. If, therefore, the provision in reference to the place of confinement to be found in section 2594 of the General Statutes is in force, it has the effect of raising many offenses to the grade of felonies that would otherwise be held to be misdemeanors, and punished only as such.

We are constrained to hold, however, that the provision quoted from section 2594 was never constitutionally enacted by the legislature. The following is the title to the act in which said section is to be found: "An act to provide for the maintenance, government and police of the penitentiary; also the mode of appointing officers and fixing the salary of the same, and to repeal several acts relating thereto." It requires no argument to show that a provision making certain offenses felonies, punishable by confinement in the penitentiary, that otherwise would be considered and punished as misdemeanors, deals with a subject not "clearly expressed" in the foregoing title, and that such legislation falls within the inhibition of section 21, article 5, of our state constitution, and is therefore void. This constitutional provision has recently received such a full consideration from this court in *Re Breene, ante,* p. 401 (decided at this term), that we shall rest content with quoting the following from the opinion in that case: "The matter covered by legislation is to be *clearly,* not dubiously or obscurely, indicated by the title. Its relation to the subject must not rest upon a merely possible or doubtful inference. The connection must be so obvious as that ingenious reasoning, aided by superior rhetoric, will not be necessary to reveal it. Such connection should be within the comprehension of the ordinary intellect as well as the trained legal mind."

The provision changing the place of confinement of persons convicted of crimes, in certain instances, from the county jail to the state penitentiary, and thereby raising the grade of many offenses from misdemeanors to felonies, is certainly not in any way indicated by the title of the act in which it is found. If it has any relation whatever to the subject, it must be to that portion expressed in the clause, "the maintenance, government and police of the penitentiary;" and, if such connection be supposed, it will be found to rest upon inference so

doubtful in character as to require the most artful reasoning to reveal it to the understanding of the average intellect. We are therefore of the opinion that the constitutionality of the act cannot be maintained. Consequently the authority of the criminal court to sentence the defendants to the state penitentiary must be determined by the terms of section 811, defining indictable conspiracies, without reference to the provisions of said section 2594. By said section 811, authority to fine and imprison persons found guilty of such conspiracies is expressly given, but the act is silent as to the place of confinement. Under such circumstances the court was only authorized to sentence the defendants to confinement in the county jail of the proper county. Therefore the present judgment, requiring the defendants to be confined in the penitentiary, must be reversed.

It is urged in argument that, as the error is in the sentence only, this court has no power, under existing statutes, either to pronounce the proper sentence, or to remand the cause for the purpose of having the correction made by the trial court. We deem it, however, unnecessary to determine these questions in this case.

As the defendant Sarah J. Brooks has recently been pardoned by the executive, no further order in reference to her is necessary. As the defendant B. Herbert Brooks has already served one year in the penitentiary under the judgment of the court below, we think he has been punished sufficiently, and he will therefore be discharged.

                                        *Reversed.*

## CLANTON V. RYAN.

1. ELECTION CONTEST — CHANGE OF JUDGE AFTER COMMENCEMENT OF TRIAL — TRIAL DE NOVO.— A county election contest may be tried notwithstanding a change of county judges after the commencement of the trial; but in such case the trial must be *de novo*.
2. WHEN RECOUNT OF BALLOTS SHOULD BE ORDERED.— Where the cause of contest alleged is error, mistake, fraud, malconduct or corruption in the counting or declaring the result of an election, a recount of the ballots should be ordered as a matter of course upon request of the complaining party.
3. THE BALLOTS MAY BE COMPARED WITH THE POLL LISTS.— Upon the production of evidence tending to show error, mistake, fraud, malconduct or corruption on the part of the election board, or any of its members, in the matter of receiving, numbering, depositing or canvassing the ballots, or other illegal or irregular conduct in respect thereto, an inspection and comparison of the ballots with the poll lists should be allowed, in connection with the oral evidence in reference thereto.
4. EVIDENCE — MATERIAL AVERMENTS MUST BE PROVEN BY CONTESTOR.— In a county election contest, the statement of contestor that he is "an elector of the county " is a material averment, and, if denied by the answer, must be proved, or the contest as such must fail; nor is the contestor excused from producing evidence in support of such averment on the ground that other competent evidence is refused.

*Appeal from County Court of Lake County.*

THE facts necessary to an understanding of the opinion, as disclosed by the record, are as follows: At the general election in 1889, there were three candidates for the office of sheriff of Lake county — Timothy B. Ryan, appellee; Harmon R. Clanton, appellant; and Willis A. Loomis. The result, as certified by the county board of commissioners, showed that Ryan had a plurality of one hundred and ninety-three votes over Clanton, the next highest competitor. Thereupon Clanton instituted proceedings against Ryan pursuant to the act of April 10, 1885. Sess. Laws, 193.

The statement of contest, filed pursuant to section 14

of said act, contains, among other things, allegations to the effect that contestor was at the date of the election, and still is, an elector of said Lake county; that there were errors, mistakes, fraud and corruption in the count and return of the votes from certain precincts of the county, and that such errors and mistakes thus fraudulently made were sufficient to change the result of the election, whereby the will of the electors was annulled and defeated, and the contestor deprived of the office to · which, but for the errors, mistakes and fraud aforesaid, he would have been declared lawfully elected.

The answer denies the alleged errors, mistakes, fraud and corruption in the count and return of the votes, and also denies that contestor was at the date of the election, or at any time since said date, an elector of said county.

The issues being settled, the contest came on to be tried before Hon. George S. Phelps, county judge; the trial commencing on December 26, 1889. A large amount of testimony was introduced in behalf of the contestor, including the testimony of nearly one hundred witnesses, and the examination of a large number of ballots which were alleged to have been fraudulently counted and returned. This evidence tended to show many gross errors, mistakes and frauds in the count and return of the votes, and other misconduct of some of the election officers, as alleged in said statement.

Pending the trial, January 13, 1890, the term of office of the presiding judge expired; and thereafter, the case being called for trial before Hon. William R. Hall, the new county judge, it was objected by counsel for contestee that the trial, having been commenced before one judge, could not be proceeded with before another. The court, however, ruled that the contest might still be tried, but that the trial must be de novo. Counsel for contestor objected and excepted to this ruling, and also to the refusal of the court to consider the testimony taken before the former judge; such testimony having been

" taken in full, and filed in said cause," as required by
the statute.

Counsel for contestor then offered the ballots which
had been cast in certain precincts as primary evidence to
contradict and dispute the return and certificate of the
judges of such precincts, and to support the particular
and specific allegations of the statement that the election
judges, by malconduct, fraud and corruption, had errone-
ously counted votes in favor of contestee which had really
been cast for contestor.   Objection to this offer was sus-
tained on the ground that there had been no proof that
would warrant the court in opening the ballot-boxes; the
court holding, however, that contestant would be per-
mitted to offer any legitimate proof of the fraud and
corruption as charged.   Counsel for contestant reserved
exceptions; and, the case being decided in favor of con-
testee, this appeal is brought.   The section of the act of
1885 (Sess. Laws, 198), specially considered in the opinion,
reads as follows:

of the supreme court, within twenty days from the date of entering such judgment. The supreme court shall advance such cause to the head of the calendar and hear and determine the same with all reasonable dispatch."

Messrs. A. S. WESTON, S. J. HANNA, GEO. GOLDTHWAITE and GEO. R. ELDER, for appellant.

Mr. A. T. GUNNELL, for appellee.