## STATE v. GUM BURNETT AND VIRGIL McGWINN.

(Filed 20 December, 1922.)

1. **Intoxicating Liquor—Spirituous Liquor—Statutes—Local Law—Repealing Statutes.**

Our general prohibition statutes, prohibiting the manufacture or sale of intoxicating liquors, expressly provide that they shall not have the effect of repealing local or special statutes upon the subject, but they shall continue in full force and in concurrence with the general law, except where otherwise provided by law; and where the local law applicable

makes the offense a misdemeanor, punishable by imprisonment in the county jail or penitentiary not exceeding two years, etc., the person convicted thereunder being guilty of a felony, C. S., 4171, the two-year statute of limitations is not a bar to the prosecution. C. S., 4512.

**2. Criminal Law—Punishment—State's Prison—"Penitentiary."**

The use of the word "penitentiary," in prescribing the punishment for one convicted under a criminal statute, has the same legal significance as the words "State's Prison," both meaning the place of punishment in which convicts sentenced to imprisonment and hard labor are confined by the authority of law.

**3. Constitutional Law—Criminal Law—Preparation for Trial—Discretion of Court—Courts—Appeal and Error.**

The question as to whether the defendant in a criminal action has sufficient time to prepare his defense before trial, and has thereby been deprived of his rights under the provisions of Article I, section 17, of our State Constitution, is one addressed to the sound discretion of the trial judge, which will not be reviewed on appeal when it is not made to appear that this discretionary power has been abused by him.

**4. Appeal and Error—Evidence—Instructions—Presumptions.**

Where the trial judge recites in his charge to the jury the testimony of a witness, which does not appear in the record, and no objection has been made thereto, it will be presumed on appeal that the recitation of the judge was correct.

**5. Criminal Law—Several Defendants—Admissions.**

Where several defendants are on trial for a criminal offense, the admissions of one are properly confined by the court to the one having made them, and excluded as to the others.

**6. Intoxicating Liquor—Spirituous Liquor—Evidence—Admissions—Incrimination—Statutes.**

Where a witness on a former trial for violating the prohibition law against the manufacture or sale of intoxicating liquor has voluntarily testified as to matters which may tend to incriminate him, claiming no exemption or immunity when called upon to testify, it is competent for witnesses to testify thereto at the second trial, who were present and heard the testimony at the former one, the testimony not coming within the terms of C. S., 3406.

**7. Intoxicating Liquor—Spirituous Liquor—Evidence—Nonsuit—Motion to Dismiss—Appeal and Error.**

*Held,* the evidence introduced upon this trial for the unlawful manufacture and sale of intoxicating liquors was sufficient to sustain a verdict of conviction, and the defendants' motion to nonsuit, or that the action be dismissed, was properly overruled.

APPEAL by defendants from *Bryson, J.,* at Fall Term, 1922, of POLK. The defendants were convicted of manufacturing spirituous liquors. The appeal presents a number of unusual questions, but we do not deem it necessary to notice but the two or three main contentions of the defendants, which will sufficiently cover the case and the points pre-

sented by defendants' counsel in their very able and learned brief, which was supplemented by a strong oral argument in this Court.

At the same term of court, the case of *S. v. Andrew Spicer, Sampson Spicer, and J. B. Jackson,* who also were charged with manufacturing liquor, was tried, when the defendant, Gum Burnett, testified that the still which the Spicers and Jackson were charged with operating belonged to him, and that he and Virgil McGwinn had run it. The still was operated about three-fourths of a mile from J. B. Jackson's property, in Cooper Gap Township, and this was the same still which was cut up by a number of officers, including officer West, who was testifying as to what Gum Burnett said. It was cut up on 11 May, 1919. Burnett stated that they worked that still about three weeks in April, three years ago. He did not say what year, but it was the same still that was cut up, and it was before it was cut up. The other defendant, McGwinn, also went on the stand and testified to a like effect. Both of these witnesses were under subpœna to testify in the case, and, of course, were under oath, when they testified as above stated. The officers who cut up the still in 1919 testified to the fact of its having been cut up, and where it was located. This was the material evidence in the case.

Defendants appealed from the judgment.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*

*Quinn, Hamrick & Harris and Solomon Gallert for defendants.*

WALKER, J. As the indictment against the defendants was returned a true bill in open court on Tuesday, 5 September, 1922, it is manifest that, if the statute of limitations applies to this offense, the prosecution was barred, it having been committed more than two years before the bill was found, and so it was urged by the defendants.

Laws of 1903, ch. 391, was an act entitled "An act to prohibit the manufacture and sale of spirituous liquors in Polk County." The manufacture of liquor under this special act was prohibited by section 1 thereof, and punished as provided in section 5, which declares that a violation of the act shall be a misdemeanor and the offender shall be imprisoned in the county jail or penitentiary not exceeding two years, or fined not exceeding $500, or both, in the discretion of the court. The defendants contend, however, that this special act has been modified in so far as the manufacture of spirituous liquors is concerned by the provisions of Public Laws of 1905, ch. 339. But this contention is not well founded. Such a public-local law, it seems, has in express terms been saved from repeal by all the general prohibition legislation, and also by the saving clause in the Consolidated Statutes, as the following

50—184

statutes will clearly show: "The Watts Law," Laws of 1903, ch. 233, sec. 19; act amending the "Watts Law," Laws of 1905, ch. 339, sec. 7; Revisal of 1905, sec. 5458; C. S., vol. 1, sec. 3411, and vol. 2, sec. 8106.

So far as the question now before us is concerned, those statutes, or rather the sections thereof specially cited, are substantially identical with C. S., 3411, which reads as follows: "Nothing in this chapter shall operate to repeal any of the local or special acts of the General Assembly of North Carolina prohibiting the manufacture or sale or other disposition of any of the liquors mentioned in this chapter, or any laws for the enforcement of the same, but all such acts shall continue in full force and effect and in concurrence herewith, and indictment or prosecution may be had either under this chapter or under any special or local act relating to the same subject."

These statutes evince the manifest purpose of the Legislature to continue in full force and effect all existing local or special statutes relating to the manufacture and sale of liquor, except where otherwise provided by law.

It is unnecessary to discuss minutely the several statutes above enumerated, as we would be led to the same conclusion with regard to the Public-Local Laws of 1903, ch. 391, relating to the manufacture and sale of liquor in Polk County, which is, that it has not been repealed, and is and was, as amended, in full force and effect when this bill of indictment was returned by the grand jury and when the defendants were convicted thereunder.

As the defendants could have been, and were, indicted for and convicted of, the felony, the statute of limitations is no bar to this prosecution. *S. v. Herring,* 145 N. C., 418; *S. v. Johnson,* 170 N. C., 685; C. S., 4512.

Felony is defined as a crime which is or may be punished by either death or imprisonment in the State's Prison. C. S., 4171. The Polk County act provides that upon conviction for manufacturing liquor, the convicted person may be imprisoned in the penitentiary. The act, of course, uses the term "penitentiary" in accordance with its ordinary signification, which is, "State's Prison." "Penitentiary" is defined in the dictionaries as a prison or place of punishment; the place of punishment provided for convicts sentenced to imprisonment and hard labor by the authority of the law. And in *Miller v. State of Kansas,* 2 Kansas, 174, it was said concerning the use of the word "penitentiary" in the sentence of a court: "The term 'penitentiary' held to be an English word in common use, which signifies a prison or place of punishment, and means the place of punishment in which convicts sentenced to imprisonment and hard labor, are confined by the authority of the law."

It follows that the statute of limitations has not barred this prosecution.

Defendants further contend that they were deprived of and denied the rights guaranteed to them under our Constitution, Art. I, sec. 17, which reads as follows: "No person ought to be taken, imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed or exiled, or in any manner deprived of his life, liberty, or property, but by the law of the land." The particular complaint is that defendants were deprived practically of the benefit of counsel, because the latter did not have the time necessary for the preparation of their defense. The judge continued the case for at least one day to allow counsel more time, but the defendants were not then ready for trial. They have presented no such case as would or should induce us to consider this exception with any degree of favor. We are satisfied that the fair, impartial, and just judge allowed defendants all the time that could possibly be spared, and that there was no abuse whatever of his discretion. 6 R. C. L., p. 548 (4). We said in *S. v. Sultan,* 142 N. C., 370: "The defendant's claim, that he was entitled as a matter of right to a continuance, is without foundation. There is no rule of law or practice that when a bill of indictment is found at one term the trial cannot be had till the next. Whether the case should be tried at that term, which is often done, and, in many cases, is required in the public interest and the orderly and economical administration of justice, or whether the case shall go over to the next term depends upon the nature of each case, of the charge and the evidence, the facility of procuring witnesses and the legal preparation necessary. In short, 'the granting or refusal of a continuance is a matter necessarily in the discretion of the trial judge and not reviewable, certainly in the absence of gross abuse of such discretion.' *S. v. Dewey,* 139 N. C., 560, and many cases there cited. Abuse of discretion is more apt to be shown in granting continuances and in the dilatory administration of justice. His Honor thought this case was one in which there should be a speedy trial. He knew all the attendant circumstances, and what was required by the public interest, more fully than this Court could know them. There is nothing to indicate that the defendant was unduly prejudiced."

The testimony of Virgil McGwinn does not appear in the record except by clear implication. It is referred to in the charge of the court, while stating a contention of the State. No exception was taken to this statement of the judge, and there was no request to change it if it was not correct. The case was prepared and signed by the solicitor and agreed to by counsel, as the case on appeal, no exceptions being reserved because of anything recited in the case. We must presume, therefore, that the judge correctly stated the evidence as to Virgil

McGwinn and his testimony in the case, while being examined as a witness, and, so considered, we find no error in the rulings of the court upon the questions of evidence. The judge properly restricted Gum Burnett's declarations to him alone, and ruled them out as to the defendant McGwinn. This was correct.

The testimony of Burnett was not made incompetent by C. S., 3406, so far as the record discloses and as the question is now presented to us. He did not claim any exemption or immunity when he was called upon to testify at the former trial, upon the ground that his answers would incriminate him, or tend to do so, nor has he otherwise shown himself to be within the terms of the statute (C. S., 3406). The law was certainly not intended to protect him, so far as appears.

These questions, as to the legal exemption of a witness from testifying in a way which will incriminate him, or tend to do so, and as to his immunity from prosecution, where he has testified in a criminal action for violating any law against the sale or manufacture of intoxicating liquors, and also as to defendant's right to a continuance of the case for trial to another time are discussed in 6 R. C. L., p. 548, par. 4, and note 12, and 140 Cyc., pp. 2543, 2544, 2547 (par. *a* and *b*), and pp. 2548, 2549, and 2550; *S. v. Stickney,* 36 Pac., 714, to which we refer.

So far as appears, the statement of the defendants as witnesses were altogether voluntary, and they had waived any right to withhold the testimony if it tended to incriminate them, nor does it appear that they, or either of them, were furnishing evidence in aid of any criminal prosecution by the State. The record is devoid of any such information.

But a sufficient answer to these objections of defendants is that they have not offered sufficient evidence, or any findings of fact by the judge, to show that they were entitled to have the testimony of the witnesses C. C. West and J. A. Feagan excluded as incompetent. The assignments of error relating to the objections do not throw any additional light upon the subject, or cure any defect in the respects we have indicated, and therefore the question discussed here is not sufficiently presented.

The motion for a nonsuit, or that the action be dismissed, was properly overruled. There was ample evidence to support a conviction, and there was no error in the charge of the court, or in the judgment or sentence imposed by it, nor was there any error in refusing to arrest the same.

After carefully reviewing the entire case as shown in the record, and with special reference to the prisoner's numerous exceptions, we have been unable to find any error therein. It will be so certified.

No error.